**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

SARAH S.,

                              Plaintiff,

        v.                                      5:20-CV-1005
                                                   (DJS)

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security,*[1]

                              Defendant.

_____

**APPEARANCES:**                        **OF COUNSEL:**

LAW OFFICES OF                          KENNETH HILLER, ESQ.
KENNETH HILLER, PLLC
Attorney for Plaintiff
600 North Bailey Avenue, Suite 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.             LUIS PERE, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to FED. R. CIV. P. 25(d).  The Clerk is directed to modify the docket accordingly.

## MEMORANDUM-DECISION AND ORDER[2]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits.  Dkt. No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 9 & 10.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted.  The Commissioner's decision is affirmed.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1982.  Dkt. No. 8, Admin. Tr. ("Tr."), p. 85.  Plaintiff reported that eleventh grade was the highest level of schooling she completed.  Tr. at p. 87.  She has past work experience as a certified nursing assistant, house cleaner, telemarketer, and as a bill collector.  Tr. at pp. 88-94.  Plaintiff alleges disability due to bipolar disorder, anxiety, depression, PTSD, fibromyalgia, and Lyme disease.  Tr. at p. 277.

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Dkt. No. 4 & General Order 18.

## B.  Procedural History

Plaintiff applied for disability and disability insurance benefits in March 2016. Tr. at p. 115, 284.  She alleged a disability onset date of April 1, 2014.  Tr. at p. 277. Plaintiff's application was initially denied on June 13, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 13-16, 173-174.  Plaintiff appeared at a hearing before ALJ Gretchen Mary Greisler on June 5, 2018, at which she and a vocational expert testified.  Tr. at pp. 78-114.  A subsequent hearing was held on May 9, 2019, during which a medical expert, a vocational expert, and Plaintiff testified.  Tr. at pp. 36-76.  On June 24, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 10-27.  On June 29, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-3.

## C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022 and that she had not engaged in substantial gainful activity since April 1, 2014, the alleged onset date.  Tr. at p. 16. Second, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, depressive disorder, bipolar disorder, attention deficit hyperactivity disorder (ADHD), substance abuse, obesity, Lyme disease, fibromyalgia, and plantar fascial fibromatosis.  *Id.*  Third, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 16-18. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following restrictions:

> [Plaintiff] can perform simple, routine, and repetitive tasks involving only simple, work-related decisions. [Plaintiff] must work in a stable setting where there is little change in terms of tools use [sic], the processes employed or the setting itself, and change, where necessary, is introduced gradually. She should not work in an environment that is stringently production or quota-based, and thus may not perform fast-paced assembly line type of work, but can meet production requirements that allow her to sustain a flexible and goal-oriented pace. She can perform work which does not require more than simple, short interactions with supervisors or coworkers; and does not require more than incidental contact with the public and, although the individual may work in proximity with others, the tasks performed should not require working in conjunction with others and should predominantly involve working with objects rather than people.

Tr. at p. 18.

Fifth, the ALJ found that Plaintiff had past relevant work as a house cleaner, telemarketer, home health aide, and bill collector, but that she was unable to perform this work. Tr. at p. 25. Sixth, the ALJ found that Plaintiff was categorized as a "younger individual" on the date the application was filed. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 26-27.

4

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial

6

gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Construed liberally, Plaintiff's Memorandum of Law presents three general errors for the Court's review.  Dkt. No. 9-2, Pl.'s Mem. of Law.  For the sake of clarity, the Court has chosen to organize these claims somewhat differently than as they were presented.  First, Plaintiff claims that the ALJ erred by failing to fully develop the record, specifically with regard to the ALJ's refusal to issue subpoenas to a particular medical provider.  Pl.'s Mem. of Law at pp. 15-16.  Second, Plaintiff contends that the ALJ erred in the evaluation of her physical and mental RFC.  *Id.* at pp. 9-15; 17-23.  Third, Plaintiff claims that the ALJ erred in her assessment of Plaintiff's credibility.  *Id.* at pp. 23-25.  In response, Defendant asserts that the ALJ's physical and mental RFC findings were supported by substantial evidence, and that the ALJ properly declined to issue the subpoena.  Dkt. No. 10, Def.'s Mem. of Law at pp. 3-25.

**A. Claim of Error Related to the Subpoena**

Plaintiff asserts a claim of error premised upon the ALJ's refusal to issue a subpoena to the Cayuga Counseling Services Sexual Assault Victims Advocacy Resources ("SAVAR") facility for her treatment records.  Pl.'s Mem. of Law at p. 15.  Although an ALJ has an affirmative duty to develop the record, this duty is not unlimited.  *Lakeisha H. v. Comm'r of Soc. Sec.*, 2021 WL 1206549, at *6 (N.D.N.Y. Mar. 31, 2016).  Social Security regulations provide that "[w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, … at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at a hearing." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting 20 C.F.R. § 404.950(d)(1)) (internal alterations omitted).  Parties to a hearing who wish to subpoena documents or witnesses must file a written request including the following:

> names of the witnesses or documents to be produced; [a description of] the address or location of the witnesses or documents with sufficient detail to find them; [a statement of] the important facts that the witness or document is expected to prove; and [an indication of] why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 404.950(d)(2).

"[T]he right to due process in a social security disability hearing does not require that a reporting physician be subpoenaed any time a claimant makes such a request."

*White v. Comm'r of Soc. Sec.*, 2016 WL 2865724, at *8 (N.D.N.Y. Apr. 21, 2016) (quoting *Yancey v. Apfel*, 145 F.3d at 111)).  As a result, "[t]he plain language of [20 C.F.R. § 404.950(d)] clearly places the decision to issue a subpoena within the sound discretion of the ALJ." *Yancey v. Apfel*, 145 F.3d at 111.

On April 15, 2019, Plaintiff's legal representative requested that ALJ Greisler issue a subpoena to secure Plaintiff's treatment records from SAVAR.  Tr. at p. 400. However, contrary to the requirements of 20 C.F.R. § 404.950(d)(2), Plaintiff's counsel did not include a statement of the important facts that the documents were expected to prove, nor an indication of why those facts could not be proven without the issuance of a subpoena.  *Id.*  ALJ Greisler denied the subpoena request on that basis, Tr. at p. 13, and Plaintiff's representative did not raise the subpoena issue at the supplemental hearing.  Tr. at pp. 78-84.  Nor does Plaintiff's brief provide any additional support for why those records were critical, beyond a general claim that they would provide evidence of Plaintiff's PTSD and traumas.  Pl.'s Mem. of Law at pp. 16-17.  Due process does not require the ALJ to issue a subpoena every time a claimant makes such a request. *White v. Comm'r of Soc. Sec.*, 2016 WL 2865724, at *8.  It is not an abuse of discretion for the ALJ to deny a subpoena request in circumstances where, as here, the Plaintiff fails to identify the important facts that the documents were expected to prove or why those facts could not be proved without a subpoena.  *Passmore v. Astrue*, 533 F.3d 658, 666 (8th Cir. 2008).

**B. Plaintiff's RFC**

*1. Physical RFC*

Plaintiff advances what generally appear to be two claims of error related the ALJ's evaluation of her physical RFC. First, Plaintiff claims that the ALJ erred in the evaluation of her fibromyalgia by improperly requiring objective evidence of the condition and by failing to adhere to the requirements of SSR 12-2P. Pl.'s Mem. of Law at pp. 6-8. The ALJ here identified Plaintiff's fibromyalgia as a severe impairment at Step 2. Tr. at p. 16. However, despite the presence of this impairment, the ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). Tr. at p. 18. In making this determination, the ALJ gave "little weight" to the opinions of consultative examiners Kalyani Ganesh, M.D., and Elke Lorensen, M.D., choosing to adopt more exertional restrictions than those opined by both examiners. Tr. at pp. 19-20. Dr. Ganesh opined that Plaintiff would have no gross physical limitations. Tr. at p. 628. Dr. Lorensen similarly opined that Plaintiff would have no gross physical limitations. Tr. at 706.

Plaintiff does not set forth any argument pointing to any medical opinion that provides support for more limitations - rather, her argument appears to be that the ALJ based her RFC on no medical opinion at all. Pl.'s Mem. of Law at pp. 10-15. This argument is unavailing. Contrary to Plaintiff's assertions, the ALJ did not base the RFC on an impermissible interpretation of bare medical findings because she did not wholly reject all medical opinions of record. Instead, the ALJ credited the opinions of Drs.

10

Lorensen and Ganesh at least in part, and chose instead to limit Plaintiff to light work rather than a greater exertional level. The findings of Drs. Lorensen and Ganesh would provide substantial evidence for a finding that Plaintiff could perform light work with no physical restrictions. *See Michael M. v. Comm'r of Soc. Sec.*, 2019 WL 530801, at *11 (N.D.N.Y. Feb. 11, 2019); *Holland v. Comm'r of Soc. Sec.*, 2016 WL 482063, at *4 (N.D.N.Y. Feb. 5, 2016). Moreover, the RFC need not perfectly correlate with the medical opinions in the record. *Lisa L.P. v. Comm'r of Soc. Sec.*, 2021 WL 1516242, at *4 (W.D.N.Y. Apr. 16, 2021). "Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Catalfamo v. Berryhill*, 2019 WL 1128838, at *2 (W.D.N.Y. Mar. 12, 2019) (internal quotation omitted) (citing cases); *see also Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, at *13 (N.D.N.Y. Mar. 30, 2021) (citing cases).

Plaintiff also appears to claim, although it is not entirely clear, that the ALJ erred by not specifically citing to SSR 12-2P in her decision. Pl.'s Mem. of Law at p. 12 ("Here, the ALJ did not properly explain and evaluate fibromyalgia and evidence properly pursuant to SSR 12-2p and sequential steps, as she did not cite to SSR 12-2p…"). However, Plaintiff cites to no authority indicating that SSR 12-2P must be mentioned explicitly by name, and in any event, it is clear that the ALJ did consider the requirements of SSR 12-2P. SSR 12-2P indicates that when a person seeks disability benefits due to fibromyalgia, there must be "sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it

11

precludes him or her from performing any substantial gainful activity." SSR 12-2P, 2012 WL 3104869, at *2. Although the ALJ noted Plaintiff's relevant clinical findings that supported fibromyalgia, such as the presence of tender/trigger points on various occasions, she also noted that on many occasions Plaintiff was in no apparent discomfort upon examination and that she had nontender joints with good range of motion. Tr. at pp. 19-20, 627, 634, 637, 639, 705, 790. The ALJ also contrasted Plaintiff's subjective reports of pain with her statements to medical providers that she was being "very active" and "constantly running around." Tr. at pp. 633, 638. A "mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability." *Donna M. W. v. Comm'r of Soc. Sec.*, 2019 WL 2603894, at *8 (N.D.N.Y. June 25, 2019) (quoting *Rivers v. Astrue*, 280 Fed. Appx. 20, 22 (2d Cir. 2008)); *see also* SSR 12-2P, 2012 WL 3017612, at *2 ("We cannot rely upon the physician's diagnosis alone."). While there may be evidence in the record that supports Plaintiff's contentions as to the severity of her symptoms, there is also substantial evidence supporting the ALJ's determination, and it is not the proper role of this Court to reweigh the evidence. *Edward A. v. Saul*, 2020 WL 4015265, at *3 (N.D.N.Y. July 15, 2020).

The Court also notes that Plaintiff claims the ALJ erred in failing to consider Plaintiff's other alleged physical conditions, such as plantar fasciitis, a degenerative hip condition, colitis, and headaches at Step 2. Pl.'s Mem. of Law at p. 13. However, it is "the claimant's burden to show at step two that she has a severe impairment." *Smith v.*

*Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 278 (W.D.N.Y. Dec. 18, 2018).  "A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe."  *Id.*  Moreover, courts in this Circuit "have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings….[W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the[ sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless."  *Id.*

Although Plaintiff cites to an emergency room record from one occasion diagnosing her with colitis in April of 2019, Tr. at pp. 1189-1210, she has not cited to any additional evidence demonstrating that the condition continued to be ongoing or severe.  The ALJ's failure to mention this condition where, as here, Plaintiff has not met her burden of establishing that the condition was severe, does not require remand.  *Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d at 278.

As to Plaintiff's other conditions, consultative examiner Dr. Ganesh specifically considered Plaintiff's reported headaches and pain in her feet and bones in his report.  Tr. at p. 626.  However, he also noted that Plaintiff "appeared to be in no acute distress," with a normal gait, and was capable of walking on her heels and toes without difficulty.  Tr. at p. 627.  He found that Plaintiff would have no gross physical limitations, an opinion echoed by Dr. Lorensen.  Tr. at p. 706.  The ALJ incorporated these opinions,

13

and also credited Plaintiff's subjective complaints, in formulating an RFC that limited Plaintiff to light work despite medical opinions finding Plaintiff to have no physical limitations.  Tr. at pp. 18-20.  Accordingly, to the extent that the ALJ failed to consider these conditions at Step 2, any such error was harmless.  *Snyder v. Colvin*, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error.")

*2. Mental RFC*

Plaintiff claims that the ALJ erred in the evaluation of her mental RFC in part due to error in the evaluation of the medical opinion evidence.  Pl.'s Mem. of Law at pp. 17-23.  Although the precise errors alleged are not entirely clear, Plaintiff generally appears to advance claims that the ALJ improperly weighed conflicting medical opinions in the record.  *Id.*

Plaintiff asserts that the ALJ improperly evaluated the opinion of consultative examiner Dr. Grassl through a selective reading of the evidence and failed to adequately explain her decision to discount portions of the opinion.  Pl.'s Mem. of Law at p. 18.  As an initial matter, as a consultative examiner, Dr. Grassl's opinion was not entitled to any specific evidentiary weight.  *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 258 (W.D.N.Y. 2018).  The ALJ rejected portions of this opinion in part because Dr. Grassl indicated that it was based upon the claimant's self-reports.  Tr. at p. 24.  It is proper for

14

the ALJ to discount a medical opinion based on an unreliable foundation, such as subjective complaints about mental limitations. *Gates v. Astrue*, 338 Fed. Appx. 46, 49 (2d Cir. 2009). The ALJ found that the report was further undermined by the internal inconsistencies between Dr. Grassl's January 15, 2018 opinion, and the January 18, 2018 opinion. Tr. at p. 24. For example, the January 15, 2018 medical source statement opined that Plaintiff would have moderate limitations in her ability to understand, remember, and apply complex directions and instructions, while the opinion provided just three days later indicated that Plaintiff would have marked limitations in this category. *Compare* Tr. at p. 690 *with* Tr. at p. 696. Moreover, the ALJ also noted that many of the more restrictive limitations were inconsistent with Plaintiff's activities of daily living and the objective findings from the treatment records. Tr. at p. 24. More specifically, the ALJ noted that although Plaintiff presented to the consultative examiner with a depressed affect and anxious mood, she also exhibited a fair manner of relating, appropriate eye contact, adequate expressive and receptive language, and coherent and goal directed thought processes. *Id.* Plaintiff also relayed to the consultative examiner that she was able to do laundry, manage money, and dress, bathe, and groom herself. *Id.* On this record, the ALJ acted within her discretion in according the doctor's reports only partial weight. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Genuine conflicts in the evidence such as these are for the ALJ to resolve. *Id.* at 128 (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Likewise, as a non-acceptable medical source at the time the claim was filed, the opinion of treating nurse practitioner Catalone was also not entitled to any special weight. *See Curley v. Comm'r of Soc. Sec.*, 808 Fed. Appx. 41, 44 (2d Cir. 2020) (noting that per Social Security regulations, opinion of nurse practitioner for a claim filed before March 27, 2017 was not considered an acceptable medical source).   As a result, it was proper for the ALJ to weigh the opinion based upon the consistency with the record and with other acceptable medical sources.   That is what the ALJ did here.   The ALJ noted that Mr. Catalone's opinion indicated that Plaintiff would be "precluded from all performance in a regular work setting" in every area of inquiry.   Tr. at p. 24.   The record reflects that no other professional opined such extreme limitations in every category, and as a result, this opinion was inconsistent with the other acceptable medical opinions of record.   Tr. at pp. 690-692, 694-698, 620-624, 910-914, 988-991.   Moreover, medical expert Michael Lace, Psy.D specifically concluded that the limitations opined by Mr. Catalone were not consistent with the record evidence.   Tr. at pp. 43-44.   He noted that Mr. Catalone's opinion on absences in particular was at odds with Plaintiff's "generally strong" mental status exams that were within normal limits in "virtually every" medical record.   *Id.*   It is the province of the ALJ to resolve these evidentiary conflicts to make the ultimate determination as to the claimant's RFC.   *Scott D. v. Comm'r of Soc. Sec.*, 2021 WL 4481191, at *5 (W.D.N.Y. Sept. 30, 2021).   While Plaintiff "may disagree with the ALJ's conclusion, the Court must defer to the Commissioner's resolution of conflicting evidence and reject the ALJ's findings only if a reasonable factfinder would

have to conclude otherwise." *Id.* (citing Morris v. Berryhill, 721 Fed. Appx. 25, 29 (2d Cir. 2018)).

Contrary to Plaintiff's contentions, the opinions of Dr. Grassl and Dr. Shapiro do not appear consistent with that of Mr. Catalone. Pl.'s Mem. of Law at p. 18. Dr. Shapiro opined that Plaintiff would have mild to moderate limitations in her ability to concentrate, persist, or maintain pace, Tr. at p. 623, while Mr. Catalone opined that Plaintiff's symptoms in this category would preclude all performance in a regular work setting. Tr. at p. 882. As the ALJ noted, Dr. Grassl's opinion was not even internally consistent, much less consistent with that of NP Catalone. *Compare* Tr. at p. 691 (indicating that Plaintiff's abilities to concentrate, persist, or maintain pace would not be affected by her symptoms), *with* Tr. at p. 697 (indicating that Plaintiff would be "markedly limited" in this category). The ALJ reasonably chose to endorse moderate limitations in this category, which is well-supported by the opinion of Dr. Shapiro, as well as the opinion of Dr. Lace, Tr. at p. 911, and the 5/26/2016 and 9/14/16 opinions of treating provider Stephanie Mancini, Tr. at pp. 989, 991. "Substantial evidence is 'evidence that a reasonable mind might accept as adequate to support a conclusion.'" *Curley v. Comm'r of Soc. Sec.*, 808 Fed. Appx. at 43 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). For that reason, an ALJ's fact-finding can be rejected "only if a reasonable factfinder would have to conclude otherwise." *Id.* (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The ALJ's conclusions here have met that deferential standard.

Next, Plaintiff claims that the ALJ "improperly relied on a medical expert of Dr. Lace [sic] whose opinion was tainted by the opinion of Dr. Didio." *Id.* at p. 17.  The ALJ noted Plaintiff's counsel's concerns in this regard and specifically chose to only give Dr. Lace's opinions weight "to the extent that they were consistent with the other opinions of record, not Dr. Didio's opinion." Tr. at p. 25.  The ALJ then found that Dr. Lace's opinions were consistent with Dr. Shapiro's opinion. *Id.*  Plaintiff has proffered no specific evidence tending to show how Dr. Lace's opinion, which was based on a comprehensive review of the medical record, could have been so affected by Dr. Didio's opinion as to render it invalid.  Moreover, the opinion of Dr. Lace is generally consistent with that of Dr. Shapiro.  Dr. Lace opined that Plaintiff would have mild limitations in her ability to understand and remember simple instructions, and mild limitations in her ability to interact with others, Tr. at p. 911, while Dr. Shapiro opined that Plaintiff would have no limitations in understanding and following simple instructions and directions, and mild to moderate limitations in her ability to relate and interact with others.  Tr. at p. 623.  The ALJ chose to adopt the somewhat-more restrictive limitations opined by Dr. Lace, and it was within her discretion to do so.

In support of her position regarding the mental RFC, Plaintiff notes that there are "multiple opinions, including from treating nurses and examining doctors who did find Plaintiff had serious limitations that may significantly interfere with Plaintiff's functioning." Pl.'s Mem. of Law at p. 18, fn. 9.  However, the existence of conflicting evidence, which the ALJ credited, Tr. at pp. 23-25, would provide substantial evidence

for a finding that Plaintiff would have only moderate restrictions in this category. *See Michael M. v. Comm'r of Soc. Sec.*, 2019 WL 530801, at *11; *Holland v. Comm'r of Soc. Sec.*, 2016 WL 482063, at *4. The ALJ's decision carefully recounted the record evidence regarding Plaintiff's mental and emotional limitations. Tr. at pp. 20-25. The ALJ did not selectively pick from the record solely to support a no disability finding since she imposed significant limitations on this part of the RFC. Tr. at p. 18.

A review of the record evidence upon which she relied clearly provides substantial evidence for her conclusion. *See, e.g.*, Tr. at pp. 19, 622, 708, 710, 712, 1005. That there was contrary evidence does not alter this fact because it "is the ALJ's role as fact-finder to weigh all the evidence and come to a conclusion." *Miller v. Comm'r of Soc. Sec.*, 2017 WL 4286295, at *6 (N.D.N.Y. Sept. 26, 2017). "While Plaintiff may disagree with the ALJ's assessment of the record evidence, it is not this Court's role to reweigh the evidence." *Edward A. v. Saul*, 2020 WL 4015265, at *3 (N.D.N.Y. July 15, 2020).

Plaintiff additionally objects to the ALJ's consideration of her activities of daily living in assessing the RFC. The ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole. 20 C.F.R. §§ 404.1529(c)(3)(i) & 416.929(c)(3)(1); *Tasha W. v. Comm'r of Soc. Sec.*, 2021 WL 2952867, at *7 (N.D.N.Y. July 14, 2021). The ALJ's reliance on Plaintiff's own testimony contained throughout the record that she was able to use public transportation and shop for food and clothing, Tr. at p. 325, was trying to get her GED,

Tr. at p. 616, was able to take care of her son, Tr. at p. 623, and her mother with cancer, Tr. at pp. 712, 1004, and volunteer for 20 hours per week at a women's homeless shelter, Tr. at p. 708, were reasonable considerations with respect to Plaintiff's limitations in a work environment. *Angelia J. v. Comm'r of Soc. Sec.*, 2021 WL 2715801, at \*4 (W.D.N.Y. July 1, 2021) (noting relevance of plaintiff's statements and the treatment notes as evidence to support RFC).

### C. Credibility Assessment

Finally, Plaintiff has set forth a general claim of error as to the ALJ's assessment of her credibility. Pl.'s Mem. of Law at pp. 23-25. The exact error claimed is again not readily apparent. As previously discussed, the ALJ's RFC decision was supported by substantial evidence and so any claim of error in this regard will not be revisited. However, to the extent that Plaintiff advances an argument that the ALJ improperly considered a statement that Plaintiff had been told not to work, Pl.'s Mem. of Law at p. 24, this was not error. The ALJ's decision contains one statement at the end of the RFC section regarding this matter that reads: "Additionally, in May 2016, the claimant relayed working with someone in Rochester who was telling her not to try working as it did not look good while applying for SSI." Tr. at p. 25. This statement is found in a treatment progress note from Plaintiff's treating provider at Ghaly Healing & Wellness Center. Tr. at p. 708. While it is clear that the ultimate decision was not based in any large part off of this one report, it was relevant evidence for the ALJ to consider. *See* SSR 16-3P, 2017 WL 5180304, at \*5 (noting that the ALJ will "examine the entire case

20

3edf51e6e5659f67

record, including . . . statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.")

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.


Dated: March 29, 2022
       Albany, New York


Daniel J. Stewart
U.S. Magistrate Judge